# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

In re:                                                                                          Civil No. 05-659 (DWF)

SRC Holdings Corporation,
f/k/a Miller & Schroeder, Inc.
and its subsidiaries,                                                            **MEMORANDUM**
                                                                                 **OPINION AND ORDER**

                Debtor.

Brian F. Leonard, Trustee,

                Plaintiff,

v.

Executive Risk Indemnity, Inc.,

                Defendant,

The Marshall Group, Inc.;
Jerome A. Tabolich; James E. Iverson; Edward
J. Hentges; Kenneth R. Larsen; Steven W.
Erickson; Paul R. Eckholm;
and Mary Jo Brenden,

and

John M. Clarey, Kenneth E. Dawkins,
and Joseph K. Halloran,

                Intervenors.

_____

Thomas C. Atmore, Esq., Leonard O'Brien Spencer Gale & Sayre, Ltd, counsel for Brian F. Leonard.

Susan E. Gustad, Esq., Bassford Remele, PA; and Daniel J. Standish, Esq., David H. Topol, Esq., and Jody H. Schwarz, Esq., Wiley Rein & Fielding, counsel for Executive Risk Indemnity, Inc.

Amy J. Swedberg, Esq., and Kirk O. Kolbo, Esq., Maslon Edelman Borman & Brand, LLP, counsel for The Marshall Group, Inc., Jerome A. Tabolich, James E. Iverson, Edward J. Hentges, Kenneth R. Larsen, Steven W. Erickson, Paul R. Eckholm, and Mary Jo Brenden.

Klay C. Ahrens, Esq., Hellmuth & Johnson, PLLC, counsel for John M. Clarey, Kenneth E. Dawkins, and Joseph K. Halloran.

---

## Introduction

The above-entitled matter came before the undersigned United States District Judge on August 5, 2005, pursuant to the appeal of Defendant Executive Risk Indemnity, Inc. ("ERI"). Defendant appeals from the Report and Recommendation as to Non-Core Issues issued by Judge Nancy C. Dreher in the proceeding captioned *In Re: SRC Holdings Corporation, f/k/a Miller & Schroeder, Inc., and its subsidiaries,* Adv. No. 03-4284. Defendant appeals to this Court to set aside the findings of fact and conclusions of law issued by the bankruptcy court in this matter. Intervenors oppose this motion in all respects. For the reasons stated, Defendant's appeal is denied and the bankruptcy court's Report and Recommendation is affirmed.

## Background

### A.     Statement of the Facts

Plaintiff Brian F. Leonard ("Trustee") is the trustee of the Chapter 7 Debtor, SRC Holding Corp., formerly known as Miller & Schroeder, Inc., and its subsidiaries ("M&S"). M&S was in the business of securities underwriting and provided securities broker/dealer services. Two groups of intervenors are present in this case ("the Intervenors"). All of the Individual Intervenors were at one time directors and officers at M&S. Defendant ERI is an insurance company that writes business insurance.

For several decades, M&S was an underwriter and securities broker/dealer with its main offices located in Minnesota. In 1997, MI Acquisition Corporation purchased the company. Using a retail insurance broker that worked with a wholesale insurance broker, M&S purchased a Directors and Officers liability insurance policy ("the Policy") from ERI. M&S declined to purchase a separate Errors and Omissions policy for itself.

**B.     The Policy**

The Policy is entitled "Directors and Officers Liability Insurance Policy Including Employment Practices Liability Coverage." The Policy's liability limit was $5,000,000, inclusive of defense costs. The Policy is a claims made policy, meaning that it provides coverage if a claim is first made during the policy period.

The Policy provides that:

(B)     The underwriter will pay on behalf of the Company:

   (1)     Loss from Claims first made against the Insured Persons during the Policy Period for Wrongful Acts . . . if the Company pays such Loss to or on behalf of the Insured Persons as indemnification; and

   (2)     (OPTIONAL COVERAGE) if it is stated in the Declarations that coverage has been made available under this INSURING AGREEMENT (B)(2), Loss from Claims first made against the Company during the Policy Period for Wrongful Acts . . . .

(C)     As part of and subject to the limit of liability stated in ITEM 3 of the Declarations, the Underwriter will have the right and duty to defend any Claim as described in INSURING AGREEMENTS (A) and (B)(1) (and, if it is stated in the Declarations that coverage has been made available thereunder, INSURING AGREEMENT (B)(2)), even if such Claim is groundless, false or fraudulent.

The Policy defines "Company" as M&S and its subsidiaries. "Insured" means the Company and any "Insured Person." An "Insured Person" is, for purposes of the claims, "any past, present or future director or officer of the Company . . . ." "Loss" is defined as any defense expenses and any "damages, judgments, settlements or other amounts" that the insured has to pay as a result of a claim. "Claim" is defined as a "written notice received by an Insured that any person or entity intends to hold any Insured responsible for a Wrongful Act. A Claim will be deemed to have been made when such written notice is first received by any Insured." A "Wrongful Act" is an "actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by an Insured Person in his or her capacity as a director or officer of the Company . . ." and "any matter asserted against an Insured Person solely by reason of his or her status as a director or officer of the Company . . . ."

ERI concedes that M&S and all of the Intervenors are insureds as defined by the Policy and that the claims involved are covered by the insuring language. However, ERI asserts that two endorsements present in the Policy form the basis for its denial of coverage in this case.

Endorsement Number 3, entitled "Securities Exclusion," provides:

In consideration of the premium charged, this Policy does not apply to any Claim based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of:

> (1) the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, any other federal law, rule or regulation with respect to the regulation of securities, any rules or regulations of the United States Securities and Exchange Commission, or any amendment of such laws, rules or regulations; or
>
> (2) any state securities or "Blue Sky" laws or rules or regulations or any amendment of such laws, rules or regulations; or

(3) any provision of the common law imposing liability in connection with the offer, sale or purchase of securities.

Endorsement Number 3 was modified by Endorsement Number 6, entitled "Limited Securities Coverage Endorsement," that states:

In consideration of the premium charged, Endorsement No. 3 will not apply to any Claim made against an Insured Person arising out of the offering, sale or purchase of Common Stock as described more fully in the Private Placement dated as of May 20, 1997.

Endorsement Number 9, entitled "General E & O Exclusion (with Management Carveback)," provides:

In consideration of the premium charged:

(1) No coverage will be available under the Policy for Loss including Defense Expenses for any Claim made against any Insured based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving an insured's actual or alleged rendering or failure to render the following services:

Investment Banking Services
Security Broker/Dealer Services
Securities Underwriting

(2) Paragraph (1) above is not intended, however, nor shall it be construed, to apply to Loss, including Defense Expenses, in connection with any Claim against an Insured to the extent that such Claim is for Wrongful Act by Insured Person in connection with the management or supervision of any division, Subsidiary or group of the Parent Corporation offering any of the aforementioned services.

The bankruptcy court noted that with a few exceptions the Policy is ERI's standard directors and officers liability policy. Endorsement Number 3 was standard language in ERI's policies and was not modified. However, Endorsement 6 was added specifically to the Policy and it includes language

5

regarding the recent private placement of M&S's stock. Finally, Endorsement Number 9 was modified by the parties to specifically exclude the type of services that M&S was in the business of performing.

The only testimony as to the meaning of the endorsements was supplied by Richard A. Fierstein. Fierstein was the owner of the wholesale broker that sold the Policy to M&S. Fierstein testified that he had considerable experience in brokering directors and officers liability insurance. He testified that a directors and officers policy is designed to protect against suits by shareholders, employees, former employees, customers, and governments alleging some form of breach of fiduciary duty of the directors and officers in their capacity as managers; whereas, an errors and omissions policy is generally used to protect professionals or those in business from mistakes made in their line of business. Fierstein also testified that Endorsement Number 3 is a standard exclusion that serves several purposes, including protecting an insurer in the event an insured went public during the policy period.

### C. The Heritage Bond Litigation

M&S was the underwriter for $140,000,000 worth of bonds that would later go into default. The bonds for twelve separate municipal bond offerings made from December 1996 to March 1999 were sold by brokers in M&S's California office. Customers who purchased the bonds lost millions of dollars and initiated suits in federal court and National Association of Securities Dealers ("NASD") arbitration proceedings (collectively the "Heritage Bond Litigation") naming M&S, M&S employees, and M&S's directors and officers as defendants.

The plaintiffs in these actions alleged a variety of claims, including violations of federal securities laws, state Blue Sky laws, common law torts, NASD rules, and municipal securities laws. The plaintiffs also included in their complaints allegations of mismanagement by M&S and the Intervenors. In some

cases, the Intervenors were actually involved in the transactions at issue.  In other cases, they have been sued solely as directors and officers of M&S or as members of M&S's Credit Committee.  Many of the cases against M&S and the Intervenors include claims involving control person liability, negligent supervision, and negligent management.

M&S tendered defense of these actions to ERI.  After much internal discussion among its claim employees, ERI denied coverage for the Heritage Bond Litigation.  ERI's letter denying coverage listed two bases for the denial.  First, ERI asserted that the Heritage Bond Litigation arose out of the sale of securities and was therefore excluded by Endorsement Number Three.  Second, ERI asserted that Endorsement Number Nine excluded any actions involved in securities broker/dealer and securities underwriting services.  ERI also claimed that Endorsement Number Nine's management carveback was inapplicable to the Heritage Bond Litigation.  ERI asserted that the carveback applied only where the claim was one against management not based on a securities sale, underwriting or investment banking activity.

M&S went about defending themselves in the lawsuits.  Prior to filing for bankruptcy, M&S had incurred $750,000 in legal fees and was assessed millions of dollars in damages.  Several of the NASD arbitration proceedings have concluded that M&S failed to properly supervise its brokers.  The bondholders have also filed claims in the bankruptcy case.

### D. Procedural History

Trustee commenced this action for breach of contract alleging that ERI agreed to defend and indemnify M&S against the claims made in the Heritage Bond Litigation.  The Intervenors were allowed to join the action with Trustee.  Trustee and the Intervenors sought partial summary judgment.  ERI

sought summary judgment on the matter as a whole.  The bankruptcy court held that M&S and the Intervenors were entitled to have all of the Heritage Bond Litigation defended by ERI and that ERI was required to pay any judgment covered by the Policy.

ERI objected to the bankruptcy court's findings of fact and conclusions of law.  Toward that end, ERI has moved this Court for an order granting ERI's Motion for Summary Judgment.  Trustee and Intervenors oppose the renewed motion in all respects.

## Discussion

### I.   Standard of Review

In reviewing a bankruptcy court's judgment or order, a district court reviews findings of fact based on a clear error standard.  *In re MBA Poultry, L.L.C.,* 291 F.3d 528, 533 (8th Cir. 2002).  A district court reviews the bankruptcy court's conclusions of law *de novo.  Id.*

In deciding a motion to dismiss, the Court must assume all facts in the Complaint to be true and construe all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  The Court grants a motion to dismiss only if it is clear beyond any doubt that no relief could be granted under any set of facts consistent with the allegations in the Complaint.  *Id.*  The Court may grant a motion to dismiss on the basis of a dispositive issue of law.  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  The Court need not resolve all questions of law in a manner which favors the complainant; rather, the Court may dismiss a claim founded upon a legal theory which is "close but ultimately unavailing." *Id.* at 327.

### II.  Interpretation of the Policy

Under Minnesota law, insurance policies are contracts and, unless there are statutory laws to the contrary, general principles of contract law apply. *Epland v. Meade Ins. Agency Assocs., Inc.,* 564 N.W.2d 203, 207 (Minn. 1997). When the language of a contract is unambiguous, courts should interpret that language in accordance with its plain and ordinary meaning. *Illinois Farmers Ins. Co. v. Glass Serv. Co.,* 683 N.W.2d 792, 799 (Minn. 2004). Courts should "guard against" invitations to find ambiguity where none exists. *Columbia Heights Motors, Inc. v. Allstate Ins. Co.,* 275 N.W.2d 32, 36 (Minn. 1979).

Once the insured has shown that coverage is applicable, the insurer has the burden to prove that a policy exclusion applies. *SCSC Corp. v. Allied Mut. Ins. Co.,* 536 N.W.2d 305, 314 (Minn. 1995). Exclusions are to be strictly construed against the insurer. *Sphere Drake Ins. PLC v. Trisko,* 24 F. Supp. 2d 985, 992 (D. Minn. 1998) (citing *Columbia Heights,* 275 N.W.2d at 35). However, if the exclusion contains an exception, the burden of proof as to the exception lies with the insured. *SCSC Corp.,* 536 N.W.2d at 314.

The Supreme Court of Minnesota has further made clear that a carveback in one exclusion does not apply to a second exclusion. *Moorhead Mach. & Boiler Co. v. Employers Commercial Union Ins. Co. of America,* 285 N.W.2d 465, 468 (Minn. 1979); *see also* 1 Allan D. Windt, INSURANCE CLAIMS AND DISPUTES, § 6.2 (4th ed. 2003) (if an exclusion applies no coverage exists regardless of inferences that may be drawn on the basis of exceptions in this and other exclusions).

An insurer's duty to defend an insured is contractual. *Meadowbrook, Inc. v. Tower Ins. Co., Inc.,* 559 N.W.2d 411, 415 (Minn. 1997). The duty to defend covers those claims that arguably fall within the scope of the insurance policy. *Id.* In determining whether such a duty exists, a court must

9

compare the allegations in the complaint in the underlying action with the language in the insurance policy. *Id.* In addition to the duty to defend, an insurer assumes the duty to indemnify its insured. *St. Paul Fire & Marine Ins. Co. v. Nat'l Chiropractic Mut. Ins. Co.,* 496 N.W.2d 411, 415 (Minn. Ct. App. 1993). However, the duty to indemnify is not as broad as the duty to defend. *Franklin v. W. Nat'l Mut. Ins. Co.,* 574 N.W.2d 405, 406 (Minn. 1998).

### A. Endorsement Number Three

The bankruptcy court held that Endorsement Number Three did not exclude the Heritage Bond Litigation from coverage for a number of reasons. First, relying on the testimony of the broker who sold the Policy, the bankruptcy court held that the endorsement only excluded actions taken in connection with the sale of M&S's securities. The bankruptcy court noted that the private placement of M&S securities in 1997 was then written back into the Policy via Endorsement Number Six.

Second, the bankruptcy court held that ERI's interpretation of Endorsement Number Three renders coverage illusory under the Policy. In support of this assertion, the bankruptcy court pointed to the fact that securities related services formed the core business activities of M&S, and as such, M&S's directors and officers would not likely be sued for anything that did not in some way involve securities.

Third, the bankruptcy court held that ERI's interpretation of Endorsement Number Three eliminates any need for the parties to include Endorsement Number Nine. Based on these findings, the bankruptcy court held that Endorsement Number Three only excluded coverage related to the sale of M&S's securities. Intervenors essentially rely on these findings of fact and conclusions of law in contesting ERI's motion.

In contrast, ERI contends that Endorsement Number Three unambiguously precludes coverage for any claim "based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of" virtually any federal, state, or common law rule concerning securities. ERI asserts that the bankruptcy court improperly limited Endorsement Number Three only to those claims brought in relation to the sale of M&S's own securities.

ERI contends that the bankruptcy court erred in applying the reasonable expectations doctrine and the illusory coverage doctrine. The reasonable expectations doctrine allows a court to honor the reasonable expectations of an insured even when policy provisions would negate those expectations. *Atwater Creamery Co. v. Western Nat. Mut. Ins. Co.,* 366 N.W.2d 271, 277 (Minn. 1985). In this case, ERI asserts that the doctrine is not applicable because the Policy's language explicitly provides that coverage would not be extended to the sale of securities.

ERI also claims that the bankruptcy court erred in its consideration of the illusory coverage doctrine. Under this doctrine, courts will extend coverage to a particular area where a policy's language makes the coverage functionally nonexistent. *Jostens, Inc. v. Northfield Ins. Co.,* 527 N.W.2d 116, 118 (Minn. Ct. App. 1995). In this case, ERI asserts that the doctrine is inapplicable as the Policy provided coverage for a variety of claims that could have been brought against M&S.

After reviewing the record, the Court finds that Endorsement Number Three does not preclude coverage for the Heritage Bond Litigation. The Court agrees with the bankruptcy court that the plain meaning and purpose of Endorsement Number Three was to protect ERI from claims based on an insured's private or public offering during the policy period. Indeed, this is the only interpretation of this endorsement that makes sense in light of the fact that the endorsement was standard fare in ERI's

directors and officers liability policies and the fact that the vast majority of ERI's insureds do not sell securities unless it is as part of a public or private placement. The Court also finds support for this position in the testimony of the broker who sold the Policy to M&S.

Since the Policy is unambiguous, the Court need not consider the applicability of the reasonable expectations or illusory coverage doctrines. Nonetheless, the Court sees merit in the bankruptcy court's application of those doctrines. In particular, the Court finds that the bankruptcy court's discussion of the illusory coverage doctrine is meritorious because it is unlikely that many suits would be brought against M&S's directors and officers that did not in some way generally relate to securities. Thus, the coverage provided by the Policy was largely illusory. Accordingly, the Court finds that Endorsement Number Three does not bar coverage of the Heritage Bond Litigation.

### B.     Endorsement Number Nine

The bankruptcy court held that Endorsement Number Nine did not provide coverage to M&S for those claims against its directors and officers where the insureds were alleged to have actively engaged in the sale of securities. However, the bankruptcy court did hold that the Policy provided coverage to M&S's directors and officers insofar as the claims against the individuals involved the management or supervision of investment banking services, security/broker dealer services, and underwriting. The bankruptcy court also held that the management carveback provided coverage for directors and officers for mismanaging the activities of any M&S employee.

ERI contends that the bankruptcy court also erred in its consideration of the applicability of Endorsement Number Nine. ERI asserts that Endorsement Number Nine's first paragraph excludes coverage for all actual or alleged acts or omissions involving securities. ERI claims that paragraph two,

the management carveback, only provides coverage in connection with claims against M&S's directors and officers where the overall management or supervision of an M&S division is at issue.

Based on its interpretation of Endorsement Number Nine, ERI asserts that none of the Heritage Bond Litigation is covered by the Policy. ERI points to the fact that many of the claims against M&S contain allegations that M&S's directors and officers were actively involved in the fraudulent activities. As a result, ERI asserts that the Policy does not extend coverage to the Heritage Bond Litigation.

The Court finds that Endorsement Number Nine's first paragraph limits the Policy's coverage by withdrawing coverage for any claim that involves the insureds rendering or failing to render investment banking, security broker/dealer, or securities underwriting services. Because M&S did not obtain an errors and omissions policy, however, the Policy cannot be read to extend coverage to the actions or omissions of M&S's directors and officers in connection with their own participation in the sale of securities. Paragraph two, the management carveback, reinstates coverage for M&S's directors and officers when they are sued for managing or supervising its employees while they were providing the securities services outlined in paragraph one.

Based on this interpretation of Endorsement Number Nine, the Court finds that ERI had a duty to defend M&S and the Intervenors in the Heritage Bond Litigation. Although many of the claims against M&S and the Intervenors would not be covered, it is clear that those claims brought against M&S's directors and officers solely based on their position within the company are covered by the Policy. In coming to this conclusion, the Court rejects ERI's contention that all of the claims brought against M&S's directors and officers involve active participation of those individuals and thus are excluded from coverage by Endorsement Number Nine's first paragraph. According to such an

interpretation of the Policy, the management carveback would provide little or no real coverage to the Policy's intended beneficiaries. Thus, ERI's Motion for Summary Judgment is denied.

## Conclusion

For the reasons stated, **IT IS HEREBY ORDERED:**

1. The United States Bankruptcy Court's denial of Defendant Executive Risk Indemnity, Inc.'s, Motion for Summary Judgment is **AFFIRMED**.

2. The United States Bankruptcy Court's grant of Trustee's and the Intervenors' Motion for Partial Summary Judgment is **AFFIRMED**.


Dated:  September 13, 2005              s/Donovan W. Frank
                                        DONOVAN W. FRANK
                                        Judge of United States District Court